**FILED**
**Dec 17, 2021**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Dionnie Walker,** | ) | **Docket No. 2021-06-0468** |
| **Employee,** | ) | |
| | ) | **State File No. 84793-2018** |
| **v.** | ) | |
| **Clarksville Dep't of Electricity,** | ) | **Judge Kenneth M. Switzer** |
| **Employer.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

Dionnie Walker alleged that her work for the Clarksville Department of Electricity resulted in injuries to both shoulders. She seeks medical benefits for her left shoulder and temporary disability benefits. The Department of Electricity counters that the statute of limitations bars her left-shoulder claim, and no doctor has related that particular injury to work.

After a December 9, 2021 expedited hearing, the Court holds that the statute of limitations has not run on her claim, but at this time, the medical proof does not support that Ms. Walker's left-shoulder condition is work-related. Therefore, the Court must deny her requested relief.

## Claim History

Ms. Walker injured her right shoulder while working for the Department of Electricity on October 10, 2018. The Department of Electricity accepted the claim and authorized treatment with Dr. Keith Starkweather. He performed surgery in late January 2019.[1]

---

[1] The medical proof contains a letter from the adjuster to Dr. Starkweather regarding whether Ms. Walker's post-surgery blood clots relate to work; he checked "no." Ms. Walker's mother testified, without contradiction, that the nurse case manager presented this letter to the doctor at a visit. On this testimony alone, it is unclear whether the nurse case manager's conduct violated the Bureau's rules, so the Court will not refer the case to the Compliance Program for the potential imposition of penalties. However, the Court cautions that a case manager "is prohibited from engaging in any activity that places him or her in an

Before the surgery, Dr. Starkweather placed Ms. Walker on modified duty. She testified that the Department of Electricity refused to accommodate her restriction, and she had to continue her regular duties using her left arm exclusively. The Department of Electricity offered no proof that it accommodated her restrictions.

According to Ms. Walker, this led to overuse of the left arm. Ms. Walker's mother and son confirmed that, after the surgery, she had difficulty performing her daily living activities because both arms appeared to be causing her significant pain.

The medical records confirm that Ms. Walker discussed her left-shoulder pain with Dr. Starkweather's physician assistant. The February 4, 2019 notes state she was there "for pain in her left shoulder. Her shoulder pain began a few weeks ago that has been worsening over the past week. She is unable to lift things with the left arm." The physician assistant assessed "pain in left shoulder" and "tendinitis of left rotator cuff." She injected the shoulder. Notes from a return visit on February 18 state that Ms. Walker was there: "for pain in her left shoulder rotator cuff tendinitis. She complains of pain since October."

The physician assistant ordered an MRI for the left shoulder, which never took place. Ms. Walker testified that both her personal insurance and the workers' compensation carrier declined to cover it, and she was unable to afford it on her own. The workers' compensation claims adjuster, Ruth Cromer, testified that she did not authorize the left-shoulder MRI because she did not see a statement in the records relating it to work.[2] Dr. Starkweather provided no more treatment for the left shoulder.

Dr. Starkweather placed Ms. Walker at maximum medical improvement on July 9, placed permanent restrictions, and assigned an impairment rating for the right shoulder. The carrier stopped paying temporary disability benefits in June, according to Ms. Walker. She testified without contradiction that the Department of Electricity did not offer her any position afterward. She applied for and received unemployment insurance benefits in March 2020. Ms. Walker said that she does not know when her termination actually occurred—July 2019 or March 2020. The Department of Electricity offered no evidence on this question.

No other notes from the authorized doctor were admitted into evidence; however, additional treatment records documented Ms. Walker's bilateral shoulder problems. These

adversarial role to either the employee or the employer." *Philalom v. State Farm Mut. Automobile Ins. Co.,* 2021 TN Wrk. Comp. App. Bd. LEXIS 34, at *17 (Oct. 8, 2021).

[2] The Department of Electricity did not disclose an intention to call Ms. Cromer as a witnesss, but Ms. Walker did not object, so the Court permitted her testimony. The Court notes that Tennessee Compilation Rules and Regulations 0800-02-21-.15(1)(a) states in relevant part that "[t]he party opposing the request for expedited hearing must . . . provide a plain, concise statement detailing why the relief requested should not be granted and listing any witnesses it intends to call at the expedited hearing."

include an October 2019 MRI report of the right shoulder ordered by Dr. Starkweather. It shows, in part, a "complete tear of the intra-articular biceps tendon with distal retraction and blunting of the superior labral biceps anchor, chronic." Likewise, an unauthorized April 2021 right-shoulder MRI showed a "chronic tear long head of the biceps tendon" and a "type II SLAP tear." Ms. Walker underwent an MRI−also unauthorized−of her left shoulder in June, which showed a type II SLAP tear and a "partial tear of the long head of the biceps tendon." Afterward, a doctor diagnosed right and left shoulder tears and outlined several potential treatments, including the possibility of surgery for the left shoulder.

Ms. Walker has since moved to New York state. She filed her petition for benefit determination on May 13, 2021, listing the injured body part as her "right shoulder."

The Department of Electricity paid the last medical bill on June 5, 2020.

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Ms. Walker must provide sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The threshold issue in this case is the Department of Electricity's statute of limitations defense. Under the Workers' Compensation Law, in cases where the employer has voluntarily paid benefits to or on behalf of the employee, the employee's right to recover compensation is forever barred unless she files a petition for benefit determination within one year after the time the employer ceased to make payments of compensation to or on behalf of the employee. *See* Tenn. Code Ann. § 50-6-203(b)(2) (2021).

Here, the unrefuted evidence shows that Ms. Walker filed her claim within the above limitations period. The last payment was on June 4, 2020; the petition was filed within a year on May 13, 2021.

The Department of Electricity argued that the statute ran on the left-shoulder claim. It pointed out that her petition for benefit determination lists an injury to her right shoulder only.

The Court rejects this argument. The Department of Electricity cited no authority for the proposition that, in cases where an employee claims injury to multiple body parts, all must be pleaded contemporaneously for purposes of the statute of limitations. In fact, persuasive case law suggests the opposite. *See Norfleet v. J. W. Goad Constr.,* No. M2001-00425-WC-R3-CV, 2001 Tenn. LEXIS 811, at *6 (Tenn. Workers' Comp. Panel Dec. 3, 2001) (Where employer argued the claims for additional conditions were not timely because they were not included in the original complaint, but were added by amendment,

which the employer asserted was not filed until after the statute of limitations had run, the original complaint in the case was "sufficient" because the employer cited no rule requiring a workers' compensation claimant to specify his injuries in the complaint).

Having denied this defense, the Court turns to whether Ms. Walker satisfied her burden to show that she is entitled to additional treatment for her left shoulder. Specifically, she must show that her left-shoulder condition is an injury "arising primarily out of and in the course and scope of employment" that causes the need for medical treatment. It must be shown to a reasonable degree of medical certainty that the employment contributed more than fifty percent in causing the injury, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(A)-(C). In addition:

> [A] subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the "direct and natural result" of a compensable injury. . . . [W]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment. Consequently, all the medical consequences and sequelae that flow from the primary injury are compensable.

*UPS v. Brown*, No. M2014-01332-SC-R3-WC, 2015 Tenn. LEXIS 628, at *7-8 (Citations omitted) (Aug. 11, 2015).

Here, the Department of Electricity did not contest that the right-shoulder injury arose primarily from employment.[3] Rather, it argued that the medical records contain no statements connecting the left-shoulder condition to work. The Court agrees.

On February 4, Dr. Starkweather's physician assistant treated Ms. Walker's left-shoulder pain, which "began a few weeks ago" and was worsening, with an injection. On February 18, the notes state that Ms. Walker was there "for pain in her left shoulder rotator cuff tendinitis. She complains of pain since October." These notations support Ms. Walker's testimony regarding the timing of the onset of her left-shoulder pain.

However, these statements do not say that the left-shoulder condition arose primarily out of and in the course and scope of employment, causing the need for medical treatment, and that, to a reasonable degree of medical certainty, the employment contributed more than fifty percent in causing the injury, considering all causes. The physician assistant also gave no opinion as to whether the left-shoulder pain was the "direct and natural result" of the right-shoulder injury. Likewise, the June 2021 MRI results show

---

[3] The Department of Electricity's counsel stated that it made a settlement offer for the right shoulder that remains in place, if Ms. Walker chooses to accept it. Further, the dispute certification notice lists only the left shoulder as "disputed." Therefore, it appears that the Department of Electricity remains willing to provide treatment for Ms. Walker's right shoulder.

tearing in the left shoulder, and a medical doctor discussed the tears with her, but the notes do not show that he linked her left shoulder condition to her work. Simply put, the records are silent on the cause of her left-shoulder pain.

The Court finds Ms. Walker's testimony wholly credible. She testified, and the Court finds, that the Department of Electricity did not accommodate her restrictions in the months following her right shoulder injury. She posited that complete reliance on her left arm resulted in "overuse" and injury. The Court finds this entirely plausible.

However, the Appeals Board has held, "It is well-settled that the employee in a workers' compensation claim has the burden of proof on all essential elements of the claim." *Lurz v. Int'l Paper Co.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *14 (Feb. 14, 2018). Ms. Walker needs medical proof to support her argument. The record before this Court at this time does not contain this evidence. Per the Appeals Board, "[J]udges are not well-suited to make independent medical determinations without expert medical testimony supporting such a determination. Likewise, parties . . . cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Id.* at *18 (Citation omitted).

Therefore, the Court holds that Ms. Walker has not satisfied her burden to show that she is likely to prove her left-shoulder condition arose primarily out of her employment. Nothing in this order precludes Ms. Walker from seeking that evidence and requesting another expedited hearing.

Finally, Ms. Walker seeks temporary disability benefits. An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Here, since the Court was unable to hold that Ms. Walker's left-shoulder condition arose primarily from work, it cannot find that she is likely to prove she became disabled from working due to a compensable injury. The Court cannot hold that she is entitled to these benefits at this time.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1.  Ms. Walker's requested relief is denied at this time.

2.  This case is set for a status hearing on **February 7, 2022**, **at 10:00 a.m. Central Time**. Please call (615) 532-9552 or (866) 943-0025. Failure to appear may result in a determination of the issues without your participation.

**ENTERED December 17, 2021.**


_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

# Appendix

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice with additional issues
3. Show-Cause Order
4. Order on Show-Cause Hearing
5. Hearing Request
6. Order Setting Expedited Hearing
7. Agreed Order

Evidence:
1. Declaration of Ms. Walker
2. Medical Proof
3. Additional medical records
4. Wage statement
5. First Report of Injury

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 17, 2021.

| Name | Certified Mail | Regular mail | Email | Sent to: |
|------|----------------|--------------|-------|----------|
| Dionne Walker, self-represented employee | X | | X | Walker.dionnie@yahoo.com<br>422 S. Fifth Ave.<br>Mt. Vernon NY 10550 |
| Larry Lee Cash, employer's attorney | | | X | Larry.Cash@millermartin.com |

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____          ☐ Motion Order filed on _____

☐ Compensation Order filed on_____          ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____

*[Signature of appellant or attorney for appellant]*